IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEPHANIE BLAHUT and DAVID CHAMBERS, individually and d/b/a GSU PHOENIX, ) ) ) ) Plaintiffs, ) ) v. ) ) ROGER ODEN, ALBERT CHESSER, JAMES McGEE, STUART FAGAN, PAUL KEYS, PEGGY WOODWARD, EMMANUEL ALOZIE, and LORRAINE SIBBET, ) ) ) ) ) Defendants. ) | No. 05 C 4989 Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Stephanie Blahut and David Chambers, individually and doing business as GSU Phoenix, filed a four-count pro se amended complaint against defendants Roger Oden, Albert Chesser, James McGee, Stuart Fagan, Paul Keys, Peggy Woodward, Emmanuel Alozie, and Lorraine Sibbet.[1] The complaint seeks declaratory and injunctive relief for alleged violations of: plaintiffs' constitutional rights pursuant to 42 U.S.C. § 1983 (Count I); the First Amendment to the Constitution (Count II); and the Fourteenth Amendment to the Constitution (Count III). The complaint also requests declaratory and injunctive relief in Count IV, plaintiffs'

---

[1] Plaintiffs also named Billy Montgomery and Nancy LaLuntas as defendants, but neither individual was ever served with process as required by Fed. R. Civ. P. 5(a).

demand for equitable relief.² Defendants have moved for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). For the reasons discussed below, the court grants defendants' motion.

# FACTS

Plaintiffs Stephanie Blahut ("Blahut") and David Chambers ("Chambers") were undergraduate students at Governors State University ("GSU") in Cook County, Illinois; Blahut was a student from 2003 to 2005, and Chambers was a student from 2002 to 2005. Both Blahut and Chambers worked for plaintiff GSU Phoenix ("Phoenix"), GSU's student newspaper. Blahut was the Editor-in-Chief ("EIC") of the paper, and Chambers worked as the Copy Editor and interim business manager.

According to Blahut and Chambers, defendant Lorraine Sibbet ("Sibbet"), Executive Director of Student Life at GSU, frequently restricted them from accessing their press office, despite prior written notice from GSU Vice President John Tuohy that Blahut, Chambers, and all other staff members of the Phoenix should have unrestricted access to the office during all GSU facility hours of operation. Plaintiffs also allege that the defendants required them, along with other Phoenix staff members, to vacate their offices at arbitrary times during their tenure with the newspaper.

From August 2003 to August 2004, defendant Sibbet refused to process Blahut's purchase orders for new equipment and necessary repairs for the newspaper. Sibbet also delayed

---

²Counts II and III are duplicative of Count I, as plaintiffs must allege violations of their constitutional rights as claims brought pursuant to § 1983. Count IV is duplicative because it merely reiterates the request for the relief sought in the other counts.

purchase orders submitted by the Phoenix, including those concerning supplies and the new printing vendor.

During the 2003 spring trimester, Sibbet, along with defendants Roger Oden ("Oden"), Dean of the GSU College of Arts and Sciences, Paul Keys ("Keys"), the GSU Provost, and Stuart Fagan ("Fagan"), GSU President, appointed defendant Emmanuel Alozie ("Alozie"), a GSU faculty member, as advisor to the newspaper, despite the fact that other student organizations chose their own advisors.

In August 2003, Blahut signed a contract with Sibbet to act as EIC of the Phoenix. That contract stated that the EIC must "review final copy of newspaper with advisor before it goes to print" and submit all requisitions to Sibbet for approval. According to Blahut, if she had not signed the contract, she would have been prohibited from assuming and performing her duties as EIC. Further, Blahut was the only leader of a student club required to sign a contract to assume her duties. As an inducement to sign the contract, Sibbet orally promised Blahut that she would provide her with sufficient staff for the newspaper. Sibbet then breached the oral agreement, forcing Blahut to advertise for, recruit, interview, and hire her own staff and then submit the names of her selections to Sibbet and Alozie for approval. Sibbet also denied Blahut's request to add more paid positions to the newspaper.

In May 2004, Sibbet withheld Blahut's pay for approximately 45 days because of a disagreement concerning the newspaper's summer production schedule. On June 9, 2004, defendant James McGee ("McGee"), Police Sergeant for the GSU Department of Public Safety, ordered a Phoenix staff photographer to cease and desist from taking photographs at a public graduation ceremony. During the spring trimester (April through August of 2004), defendants

Sibbet, Oden, Keys, and Alozie, along with Peggy Woodward ("Woodward"), GSU Assistant Provost, refused to authorize a purchase order request made by Blahut to pay Chambers for his work as interim business manager and interim EIC. Also during that trimester, defendants Sibbet, Oden, Keys, and Fagan placed two recently hired adjunct faculty members in the EIC and newly created Technical Coordinator positions without interviewing other applicants.

On March 11, 2004, Blahut submitted an 18-count grievance to Sibbet concerning her tenure as EIC. Sibbet refused to conduct an investigation into Blahut's complaints. According to Blahut, defendants Fagan and Woodard also failed to investigate her grievance from April 2004 to August 2004. Additionally, from August 2003 to August 2004, Sibbet signed off on paperwork concerning charges to the newspaper's account without showing the paperwork to Blahut, who was responsible for the paper's finances. Sibbet also deducted money from the newspaper's account without Blahut's knowledge or authorization.

According to Blahut, she submitted a budget for the newspaper's 2005 operations. That budget was $15,000 less than the budget submitted for the 2004 calendar year and was approved by the GSU Student Senate Fee and Finance Committee, but Sibbet decreased the original funding amount and Woodard approved that reduced amount.

On February 10, 2005, Sibbet issued a university-wide e-mail containing the GSU Student Senate election results, which stated that Chambers had won a seat as the Board of Governors Student Senate representative. On February 17, 2005, Sibbet reissued the results with Chambers's name removed. Plaintiffs allege that Sibbet removed Chambers from his seat in retaliation for an investigation that Chambers had conducted for the Phoenix in June 2004 as to the source of funding for GSU's new gymnasium floor.

4

**DISCUSSION**

The standard of review for a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is the same as that for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local Union 150, AFL-CIO, 335 F.3d 643, 647 (7th Cir. 2003). Facts alleged in the complaint are viewed in the light most favorable to the non-moving party, and judgment may not be granted unless it appears beyond a doubt that the non-moving party cannot provide facts that would support a claim. Id.

Lack of Standing

Defendants argue that plaintiffs have not stated a claim because they lack standing to bring suit. To establish standing, a plaintiff must show: (1) an "injury in fact," meaning an invasion of a legally protected interest that is concrete and particularized, actual, or imminent, and not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the defendant's actions; and (3) that a favorable decision is likely to redress the injury alleged. Tobin for Governor v. Ill. State Bd. of Elections, 268 F.3d 517, 527-28 (7th Cir. 2001), cert. denied, 535 U.S. 929 (2002) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Sierakowski v. Ryan, 223 F.3d 440, 442-43 (7th Cir. 2000)). Abstract injury is not enough to establish injury in fact; the plaintiff must establish that he or she has sustained or is immediately in danger of sustaining some direct injury. See City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983); Tobin, 268 F.3d at 527-28.

Defendants first argue that plaintiffs Blahut and Chambers cannot meet the third prong of the test because they are no longer students and therefore no longer face continuing injuries that could be redressed by a judgment in their favor. Indeed, plaintiffs allege only "past exposure" to wrongful conduct on the part of defendants, which "does not itself show a present case or controversy regarding injunctive relief...if unaccompanied by any continuing, present adverse effects." O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974).

Plaintiffs concede that Blahut is no longer a GSU student, but argue that she has standing because she seeks monetary damages, as discussed below. Plaintiffs argue, however, that Chambers is still enrolled in a GSU course[3] and therefore has standing in the instant case regardless of the type of damages he seeks. Plaintiffs, however, present no evidence whatever that Chambers is still involved with the Phoenix or that he intends to become involved with the newspaper in the imminent future. There is therefore no evidence that injunctive or declaratory relief would redress Chambers's alleged injuries; he does not allege present harm by defendants, and any allegation of future harm would be merely speculative. Lyons, 461 U.S. at 111.

Monetary Damages

Plaintiffs also argue that both Blahut and Chambers have standing because their amended complaint entitles them to monetary damages in addition to declaratory and injunctive relief. If a plaintiff seeks monetary damages in addition to other relief, the "case is not moot even if the underlying conduct that caused the injury has ceased." Brown v. Bartholomew Consol. School

---

[3]Defendants correctly note that plaintiffs do not allege in their amended complaint that Chambers is currently enrolled at GSU; indeed, the complaint alleges that Chambers was a GSU student and was formerly the Copy Editor and interim business manager for the Phoenix.

6

Corp., 442 F.3d 588, 596 (7th Cir. 2006), citing Powell v. McCormack, 395 U.S. 486, 496 (1969).

Plaintiffs did not explicitly seek monetary damages in their amended complaint. In fact, they deliberately ommitted such a claim and sought "declaratory, injunctive, and equitable relief"; in their prayer for relief, plaintiffs seek declaratory judgment, injunctions, and attorneys' fees, along with "such other and further relief that the Court deems necessary and appropriate." Plaintiffs now claim that although they did not seek monetary damages in their complaint, the court could award such damages, which keeps the otherwise moot claim alive.

Plaintiffs are correct that pursuant to Fed. R. Civ. P. 54(c), "every final judgment shall grant the relief to which the party in whose favor it is rendered is entitled, even if the party has not demanded such relief in the party's pleadings." Plaintiffs' claims, however, do not <u>entitle</u> them to monetary damages should they prevail on the merits. The only financial harm alleged by plaintiffs is the denial of their salaries, which is not relief appropriately awarded for First Amendment claims brought pursuant to § 1983.[4]

Further, plaintiffs sought damages in their original complaint, but did not request such damages in the amended complaint. Plaintiffs cannot now amend their complaint to add such damages through their response to defendants' motion for judgment on the pleadings without seeking leave of the court. Amendola v. Bayer, 907 F.2d 760, 764 (7th Cir. 1990). Because plaintiffs Blahut and Chambers do not present an adequate claim for monetary damages and do not allege other injuries that can be redressed by injunctive or declaratory relief, the court finds that these plaintiffs lack standing to bring a claim.

---

[4]To the extent that plaintiffs may be seeking to assert a state law claim for their salaries, the court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367. Of course, if plaintiffs have such a claim, they may be able to assert it in state court.

Representational Claims

Finally, plaintiffs Blahut and Chambers have brought claims on behalf of plaintiff Phoenix in a representational capacity. Although the newspaper may indeed have sustained injuries that could be redressed by declaratory or injunctive relief, plaintiffs Blahut and Chambers cannot bring claims on behalf of plaintiff Phoenix. Plaintiffs are correct that students can sue as representatives of a student organization, but they can do so only when represented by counsel. 28 U.S.C. § 1654; see also United States ex rel. Lu v. Ou, 368 F.3d 773, 775 (7th Cir. 2004) (law "forbids" nonlawyers from representing other organizations or individuals). Plaintiffs therefore lack standing to bring claims on behalf of the Phoenix.

## CONCLUSION

For the reasons discussed above, the court finds that plaintiffs lack standing to bring the instant suit and grants defendants' motion for judgment on the pleadings.

**ENTER:** September 11, 2007

_____
**Robert W. Gettleman
United States District Judge**